IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY LOVE DAWKINS,** | : | Civil No. 3:20-CV-1467 |
| **Plaintiff** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **KEVIN RANSOM, et al.,** | : | |
| **Defendants.** | : | |

# MEMORANDUM OPINION

## I.   Introduction

This is a civil rights action brought by Jeffrey Dawkins, an inmate housed in the Pennsylvania Department of Corrections at the State Correctional Institution (SCI) Dallas. Dawkins' case arises out of a singular, and singularly unexpected event: On January 15, 2020, the porcelain toilet in Dawkins' cell shattered underneath him while he was using this facility, and Dawkins was injured when shards of porcelain pierced him. For their part, the defendants concede that there was an unfortunate accident in Dawkins' cell relating to the collapse of this toilet but have filed a motion for summary judgment, which disputes whether this incident rose to the level of an Eighth Amendment violation. (Doc. 37).

With respect to this pending summary judgment motion, it is entirely uncontested that this event was both unprecedented and unexpected. Prior to January

15, 2020, Dawkins had experienced no problems with this toilet. Moreover, prison officials have attested that they had never previously encountered a mishap of this type, the catastrophic failure and collapse of a porcelain toilet resulting in injuries to an inmate.

Dawkins has framed his constitutional tort claims in this case in terms of an alleged violation of the Eighth Amendment's prohibition against cruel and unusual punishment. In this setting, where a prisoner is injured due to a hazardous condition in the prison, in order to establish an Eighth Amendment violation Dawkins must be shown that prison officials were deliberately indifferent to a serious risk to his health and safety. At a minimum, this deliberate indifference standard means that the defendants must have a subjective awareness of the dangers presented by some condition of confinement, and then fail to ameliorate that danger.

Given this constitutional benchmark, which requires subjective awareness of some grave risk to inmate safety, we find that Dawkins' constitutional claims founder and fail since the unexpected nature of this mishap, which was without precedent at the prison, rebuts any assertion that the defendants were deliberately indifferent to a known danger. Accordingly, we will grant the defendants' motion for summary judgment.

II. **Statement of Facts**[1]

The pertinent facts in this case can be simply stated: Jeffery Dawkins is a state inmate who is currently housed at SCI Dallas. Beginning on November 14, 2019, Dawkins was housed with a cellmate in Cell 86, on J-Block in this prison. This cell was equipped with a porcelain toilet.

In January of 2020, Dawkins weighed approximately 250 to 270 pounds. While housed in Cell 86, Dawkins regularly used the toilet in the cell, utilizing that facility three to four times each day. Prior to January 15, 2020, Dawkins had never experienced any problems or issues with the toilet, and the only issue Dawkins recalled his cellmate reporting related to the toilet moving or being loose at some otherwise unidentified time.

At approximately 7:20 p.m. on January 15, 2020, Dawkins was using the toilet when it shattered unexpectedly. Dawkins fell to the floor on top of the broken porcelain, water, and human waste, suffering cuts to his buttocks and left wrist. Dawkins required eight stitches to close the wound on his buttocks and an additional six to seven stitches on his wrist injury. Dawkins remained at the prison infirmary for approximately two weeks while he was treated for his injuries.

---

[1] This statement of facts is taken from the parties' submissions to the extent that undisputed evidence of record in this case supports those submissions. (Doc. 43).

Dawkins' deposition testimony makes it clear that this mishap was a wholly unforeseen event. Dawkins had experienced no problems with the toilet prior to January 15, 2020 and reported nothing unusual or untoward at the outset of his use of this facility on January 15. Rather, Dawkins described the toilet collapse as a sudden event, which took place without any prior warning, beyond a sound like a gunshot at the moment that the toilet broke and collapsed.

Prison officials have also attested that the catastrophic failure of this toilet resulting in an inmate injury was an unprecedented event. Both Bryan Brown, the Safety Manager at SCI Dallas, and Paul Mooney, the facility maintenance manager at this prison, reported that they were unaware of any similar incidents ever occurring at the prison.[2] Thus, for all concerned, this regrettable event appears to have been entirely unforeseen, unexpected, and unprecedented.

It is against this factual backdrop that Dawkins filed the instant lawsuit. In his complaint, Dawkins does not challenge the medical care he received in the wake of this accident. Instead, he simply alleges that this episode violated his constitutional

---

[2] It is reported that the prison's porcelain toilets are being replaced by stainless steel facilities, a process that began prior to Dawkins' injury and continues to this day. Dawkins invites us to infer from this toilet replacement project that prison officials must have been aware of the specific danger he experienced, injuries caused by the sudden implosion of porcelain toilet bowls, but this speculative inference draws no support from the evidentiary record. Instead, Mr. Mooney's uncontradicted declaration explains that the replacement project, which began four years ago, was initiated because the steel toilet bowls are more water efficient and less expensive that the older, porcelain toilets. (Doc. 43-4).

right to be free from cruel and unusual punishment under the Eighth Amendment in that the defendants displayed deliberate indifference to the serious risk to his health and safety presented by the sudden collapse of this toilet.

The defendants have now moved for summary judgment, arguing on these undisputed facts that it cannot be said that they were deliberately indifferent to the plaintiff's safety, the touchstone standard for a viable Eighth Amendment claim. This motion is fully briefed and is, therefore, ripe for resolution. As discussed below, given the wholly unanticipated nature of this injury, we find that the uncontested evidence rebuts any claim of deliberate indifference by prison officials to a known danger to Mr. Dawkins' well-being. Accordingly, the motion for summary judgment will be granted.

### III. Discussion

#### A. Motion for Summary Judgment – Standard of Review

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co.

v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla

of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

7

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against these legal benchmarks that we assess the defendants' motion for summary judgment.

### B. Guiding Principles: Eighth Amendment Claims

Several overarching and animating constitutional considerations govern analysis of any Eighth Amendment claim. As the Court of Appeals has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of

9

> protections. Id. at 298, 111 S. Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344–45 (3d Cir. 2000).

Thus, while prison officials may violate an inmate's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to an inmate's needs, to sustain such a claim an inmate must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

This deliberate indifference standard is an exacting benchmark for constitutional tort liability under the Eighth Amendment. As we have observed:

> As explained in Beers–Capitol, in cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under

10

the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.' " Id. (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Id. (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842, 114 S.Ct. 1970. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Quarles v. Palakovich, 736 F.Supp.2d 941, 947–48 (M.D. Pa. 2010). Thus, the Eighth Amendment deliberate indifference standard, at a minimum, calls for knowledge of some substantial risk to the health and safety of inmates, and a failure to act in the face of that known danger. A necessary corollary to this deliberate indifference standard is the notion that "deliberate indifference entails something more than

11

mere negligence." Farmer, 511 U.S. at 835. Therefore, a mere accident or inadvertence on the part of corrections officials does not violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 292 (1976).

The same guiding principles apply to inmate complaints, like those made here, regarding conditions of confinement. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health." Fuentes, 206 F.3d at 345 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' " Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1991)). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003). Thus, these claims also require proof of a both culpable state of mind and objective proof of physical conditions of confinement that shock the conscience and depart from minimal civilized standards of life's necessities. Simply put, "[t]o violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard." Hammond

v. Bledsoe, 2013 WL 5797647, at *10 (M.D. Pa. Oct. 28, 2013) (citing Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985)); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 757 (3d Cir. 1979)).

### C. Dawkins' Eighth Amendment Claim Fails on Its Merits.

Given that Eighth Amendment claims are governed by this subjective deliberate indifference standard, Dawkins' complaint runs afoul of an insurmountable obstacle: this accident, and Dawkins' injuries, were entirely unexpected, unforeseen, and unprecedented. Since mere negligence or inadvertence with not suffice to establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, the fact that no one anticipated this extraordinary event—the sudden, catastrophic implosion of a porcelain toilet while in use—defeats any deliberate indifference claim.

Simply put, facts are stubborn things, and the undisputed facts in this case show that neither Dawkins, nor the defendants, had any reason to anticipate that this toilet would violently implode while in use. Since the defendants cannot be deliberately indifferent to unprecedented and unknown mishaps or dangers, the lack of any foreseeability to this accident rebuts any Eighth Amendment claim that the defendants were deliberately indifferent to a known risk to Dawkins' safety and compels the dismissal of this complaint.

### D. The Defendants Are Entitled to Qualified Immunity.

In any event, even if we determined that Dawkins had stated a colorable constitutional claim, we believe that the defendants would still be entitled to qualified immunity from damages. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case

14

directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

In the instant case, based on our analysis of Dawkins' Eighth Amendment claim, we conclude that the defendants are entitled to qualified immunity. Just as the wholly unanticipated nature of this mishap defeats any claim of deliberate indifference, it follows that the defendants' conduct in failing to anticipate an unknown hazard presented by the sudden implosion of a toilet could not have transgressed clearly established caselaw. Accordingly, the defendants are also

entitled to qualified immunity, and the defendants' motion for summary judgment will be granted.[3]

## IV. Conclusion

Accordingly, for the foregoing reasons, the defendants' motion for summary judgment (Doc. 37) will be GRANTED.

An appropriate order follows.

*s/ Martin C. Carlson*  
Martin C. Carlson  
United States Magistrate Judge

Dated: January 7, 2022

---

[3] We note that in proper cases the court may consider the question of qualified immunity *sua sponte*. See Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001).